NOT RECOMMENDED FOR PUBLICATION

File Name: 24a0517n.06

Case No. 23-2071

**UNITED STATES COURT OF APPEALS**
**FOR THE SIXTH CIRCUIT**

FILED

Dec 11, 2024

KELLY L. STEPHENS, Clerk

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | ON APPEAL FROM THE |
| Plaintiff - Appellee, | ) | UNITED STATES DISTRICT |
|  | ) | COURT FOR THE EASTERN |
| v. | ) | DISTRICT OF MICHIGAN |
|  | ) |  |
| RUSSELL WAYNE SALISBURY, | ) | O P I N I O N |
| Defendant - Appellant. | ) |  |

Before: GIBBONS, McKEAGUE, and STRANCH, Circuit Judges.

**McKEAGUE, Circuit Judge.** Russell Salisbury pleaded guilty to possession with intent to distribute methamphetamine. The applicable sentencing guidelines range was 77 to 96 months in prison. After reviewing Salisbury's extensive criminal history, including multiple convictions for sexually assaulting minors, the district court sentenced him to 77 months in prison, consecutive to an undischarged and unrelated state prison sentence. The court also prohibited Salisbury from contacting minors without permission while on supervised release.

Salisbury appeals his sentence, claiming that (1) his bottom-of-the-guidelines sentence was procedurally and substantively unreasonable, and (2) the district court improperly imposed a condition of supervised release that is unrelated to the crime of conviction. Because the court provided sufficient justification for both the sentence and the conditions of supervised release, Salisbury's arguments fail. We **AFFIRM** the district court's judgment.

**I.**

In July 2020, law enforcement officers received a tip that three men were selling methamphetamine in a hotel parking lot in Gladwin, Michigan. As the officers prepared to execute a search warrant at the hotel, one of the three suspects met Salisbury in the parking lot. The officers approached the scene, and Salisbury sped away in his car. During the ensuing pursuit, Salisbury threw a bag out of the car window before he was eventually caught and arrested. The bag contained over 100 grams of methamphetamine. Salisbury admitted that he frequently purchased methamphetamine and typically sold about half of what he bought.

Salisbury was charged with one count of possession with intent to distribute more than 50 grams of methamphetamine, in violation of 21 U.S.C. § 841(a). Salisbury pleaded guilty to the charge without a plea agreement. The mandatory minimum sentence was five years in prison followed by four years of supervised release. *See* 21 U.S.C. § 841(b)(1)(B)(viii). The presentence investigation report (PSR) stated that the sentencing guidelines range was 77 to 96 months of imprisonment. Salisbury did not object to the PSR or the recommended guidelines range.

The district court held a sentencing hearing in December 2023. At that time, Salisbury was serving an undischarged sentence of 14 to 240 months in state prison for possession of methamphetamine. The sentence, which was enhanced under Michigan's habitual offender statute, resulted from a 2022 traffic stop that was unrelated to the events that led to his federal indictment.

At the sentencing hearing, Salisbury acknowledged his extensive criminal history and conceded that he had "blazed quite the trail." Sent'g Tr., R.77 at PageID 432. Salisbury then requested a sentence of 60 months—the mandatory minimum and 17 months below the guidelines range. He added that the federal sentence should run concurrently with his ongoing state prison sentence because "[t]he underlying issues . . . are the same." *Id.* at PageID 437.

The government requested a sentence within the guidelines range that would run "at least partially consecutive[ly]" to Salisbury's state prison sentence. *Id.* The government noted that Salisbury had multiple convictions for domestic violence and sexual assault of minors. In one

instance, Salisbury sexually assaulted his daughter's 13-year-old friend while she was staying at his home. The government further noted that Salisbury repeatedly violated the terms of his probation. After Salisbury was released pending trial in this case, he (1) assaulted his pregnant girlfriend, (2) resisted corrections officers at the Gladwin County Jail, and (3) possessed methamphetamine again.

The district court sentenced Salisbury to 77 in months in prison—the bottom of the guidelines range—consecutive to his undischarged state prison sentence. The court first acknowledged that Salisbury had a difficult childhood, but then noted that there was "uncorrected chaos in his life." *Id.* at PageID 438. The court specifically referenced Salisbury's sex offenses, noting that he committed at least one of them while wearing a court-ordered monitoring device. Salisbury's consistent problems with substance abuse and domestic violence were also "concerning." In the court's view, Salisbury had every reason to know of the "potential consequences of the behavior" that led to his federal charge. The court then determined that a consecutive sentence was justified because the state offense and the federal offense "were separate events," and "it's appropriate that the sentences indeed be served for the different behavior." *Id.* at PageID 439.

The district court also placed Salisbury on supervised release—with special conditions—for four years following his incarceration. One of the conditions prohibited Salisbury from having direct contact with a child under the age of 18, including his own children, without permission from his probation officer.

Salisbury did not object to the district court's sentence, but he timely appealed.

## II.

### A.      Term of Incarceration

Salisbury first claims that his 77-month sentence was unreasonable. There are two components to our review of a district court's sentence: procedural reasonableness and substantive

reasonableness. *See United States v. Solano-Rosales*, 781 F.3d 345, 351 (6th Cir. 2015). First, we must determine whether the court committed any significant procedural errors, such as failing to "consider the sentencing factors in 18 U.S.C. § 3553(a)" or "explain why it chose the sentence." *United States v. Rayyan*, 885 F.3d 436, 440 (6th Cir. 2018) (citing *Gall v. United States*, 552 U.S. 38, 51 (2007)). Then, we must consider the substantive reasonableness of the sentence by asking whether the sentence "conforms with the sentencing goals" set out in § 3553(a). *United States v. Perez-Rodriguez*, 960 F.3d 748, 753 (6th Cir. 2020).

On appeal, Salisbury argues that his sentence was (1) procedurally unreasonable because the district court failed to adequately explain its reasoning, and (2) substantively unreasonable because the court placed too much weight on his criminal history and not enough weight on the fact that he was already serving a state prison sentence. We disagree.

### 1.    Procedural Reasonableness

First, we consider whether the district court's sentence was procedurally reasonable. Normally, we review this question under the abuse-of-discretion standard. *See United States v. Small*, 988 F.3d 241, 257 (6th Cir. 2021). But because Salisbury failed to object to any procedural defects in the district court, we review his procedural reasonableness claim for plain error. *Solano-Rosales*, 781 F.3d at 351. Under plain error review, Salisbury must show that there was "(1) error (2) that 'was obvious or clear,' (3) that 'affected [Salisbury's] substantial rights' and (4) that 'affected the fairness, integrity, or public reputation of the judicial proceedings.'" *United States v. Vonner*, 516 F.3d 382, 386 (6th Cir. 2008) (en banc) (quoting *United States v. Gardiner*, 463 F.3d 445, 459 (6th Cir. 2006)).

Salisbury does not challenge the guidelines calculation or claim that the court relied on erroneous facts. Instead, he argues that his sentence is procedurally defective because the court failed to sufficiently explain its reasoning.

The district court is required by statute to state "the reasons for its imposition of the particular sentence." 18 U.S.C. § 3553(c). But the court is not required to recite a "ritual

incantation" of the sentencing factors provided by 18 U.S.C. § 3553(a). *United States v. Conatser*, 514 F.3d 508, 524 (6th Cir. 2008); *see also United States v. Trejo-Martinez*, 481 F.3d 409, 413 (6th Cir. 2007). Rather, the required depth of the court's reasoning depends on the circumstances of each case. *See Rita v. United States*, 551 U.S. 338, 356 (2007) ("The appropriateness of brevity or length, conciseness or detail, when to write, what to say, depends upon circumstances."). For example, a judge's decision to apply the sentencing guidelines range "will not necessarily require lengthy explanation." *Id.* So long as the court "addressed the relevant factors in reaching its conclusion" and the record "allow[s] for meaningful appellate review," the resulting sentence is procedurally reasonable. *United States v. Dexta*, 470 F.3d 612, 614–15 (6th Cir. 2006). And because we review this claim for plain error, we will only reverse if the court's explanation "was so deficient as to qualify as obvious error." *United States v. O'Lear*, 90 F.4th 519, 541 (6th Cir.), *cert. denied*, 144 S. Ct. 2542 (2024).

The district court adequately explained why it sentenced Salisbury to 77 months in prison. First, the court said there was "no doubt" that Salisbury had a difficult childhood. Then the court addressed Salisbury's extensive criminal history. The court specifically noted that he committed one of his crimes—sexually assaulting his daughter's thirteen-year-old friend—while wearing a court-ordered monitoring device. The court then cited Salisbury's substance abuse, his history of domestic violence, the fact that Salisbury knew the potential consequences of his behavior, and "the circumstances of the offense that [brought] Mr. Salisbury into court." In short, the court referenced the sentencing factors under § 3553(a) that it found to be "particularly important": the sentencing guidelines range, the nature of the offense, Salisbury's criminal history, the need for deterrence, and mitigating circumstances. This analysis was sufficient to explain the relevant factors and permit appellate review of the court's reasoning. *Dexta*, 470 F.3d at 614–15. Under plain error review, it was not "so deficient as to qualify as obvious error." *O'Lear*, 90 F.4th at 541.

## 2.       Substantive Reasonableness

We next consider whether Salisbury's bottom-of-the-guidelines sentence was substantively reasonable. A sentence is substantively unreasonable if it is "too long." *Rayyan*, 885 F.3d at 442. More specifically, the sentence must be "'proportionate to the seriousness of the circumstances of the offense and offender, and sufficient but not greater than necessary, to comply with the purposes' of the sentencing factors." *United States v. Johnson*, 24 F.4th 590, 607 (6th Cir. 2022) (quoting *United States v. Vowell*, 516 F.3d 503, 512 (6th Cir. 2008)).

Even though Salisbury did not object to his sentence in the district court, we review the substantive reasonableness of the sentence for an abuse of discretion rather than for plain error. *Solano-Rosales*, 781 F.3d at 356. We afford a "great deal of deference" to the district court, as the court "is in a superior position to find facts and judge their import under § 3553(a)." *United States v. Xu*, 114 F.4th 829, 846 (6th Cir. 2024) (quoting *United States v. Mayberry*, 540 F.3d 506, 519 (6th Cir. 2008)). Because the court's sentence was within the sentencing guidelines range, we presume that it is substantively reasonable. *United States v. Gardner*, 32 F.4th 504, 530 (6th Cir.), *cert. denied*, 143 S. Ct. 251 (2022). Salisbury can rebut this presumption by showing that the court "chose a sentence arbitrarily, ignored pertinent § 3353(a) factors, or gave unreasonable weight to any single factor." *Id.* (citing *Conatser*, 514 F.3d at 520).

Salisbury claims that his sentence is substantively unreasonable because the district court placed "inordinate weight" on Salisbury's criminal history. In other words, he argues that the court "placed too much weight on [one] of the § 3553(a) factors and too little on others." *Rayyan*, 885 F.3d at 442.

There is no reason to deviate from the presumption of reasonableness here. As explained above, the district court considered several § 3553(a) factors before sentencing Salisbury to 77 months in prison. While the court highlighted Salisbury's prior criminal activity—including sex offenses and domestic violence—it also addressed his difficult childhood and the need for deterrence. Moreover, the court specifically noted that its determination was driven not by

Salisbury's criminal history, but by the nature of the offense. Because the court exercised "reasoned discretion," we are in no position to second-guess its ultimate conclusion. *Id.* Salisbury's 77-month sentence is substantively reasonable.

### B.      Consecutive Sentence

Salisbury next argues that the district court's decision to have the 77-month sentence run consecutively to his undischarged state prison sentence was unreasonable. In his view, the court failed to sufficiently explain why a consecutive sentence was warranted (i.e., the sentence is procedurally unreasonable), and his consecutive sentence creates "sentencing disparities among defendants with similar records" (i.e., the sentence is substantively unreasonable). This challenge fails too.

Salisbury did not object to the imposition of a consecutive sentence before the district court, so we review his procedural claim—that the court's reasoning was inadequate—under the plain error standard described above. *See United States v. Mitchell*, 107 F.4th 534, 546 (6th Cir. 2024); *United States v. Hall*, 632 F.3d 331, 335 (6th Cir. 2011). We review his substantive claim—that the consecutive sentence is disparately long—for an abuse of discretion. *See United States v. Majors*, 852 F. App'x 956, 963–64 (6th Cir. 2021); *United States v. James*, 428 F. App'x 533, 536 (6th Cir. 2011).

### 1.      Procedural Reasonableness

If a defendant "is already subject to an undischarged term of imprisonment" at the time of federal sentencing, then the federal sentence "may run concurrently or consecutively" to the undischarged sentence. 18 U.S.C. § 3584(a). When deciding whether the federal sentence should run concurrently or consecutively, the district court "shall consider . . . the factors set forth in [18 U.S.C. §] 3553(a)." *Id.* § 3584(b).

In addition to these statutory factors, the court must also consider any applicable guidelines or policy statements issued by the United States Sentencing Commission. *United States v. Johnson*,

640 F.3d 195, 208 (6th Cir. 2011). In this case, the relevant Sentencing Commission policy statement provides that the federal sentence "may be imposed to run concurrently, partially concurrently, or consecutively to the prior undischarged term of imprisonment to achieve a reasonable punishment for the instant offense." U.S. Sent'g Guidelines Manual § 5G1.3(d) (U.S. Sent'g Comm'n 2021). The related application note states that courts should also consider the 18 U.S.C. § 3584 factors (i.e., the § 3553(a) factors), the type and length of the undischarged sentence, the time already served on the undischarged sentence, the time likely to be served on the undischarged sentence, the fact that the undischarged sentence was imposed in state court, and "any other circumstance" that is relevant to choosing an appropriate sentence. U.S. Sent'g Guidelines Manual § 5G1.3, comment. (n.4) (U.S. Sent'g Comm'n 2021).

The court does not need to explicitly reference § 5G1.3 "if there is some other evidence in the record that it considered the section." *Hall*, 632 F.3d at 336. So long as the court's reasoning is "generally clear," then the court does not commit plain error if it fails "to expressly consider the factors contained in § 5G1.3 Application Note 4(A)." *United States v. Potts*, 947 F.3d 357, 369 (6th Cir. 2020) (internal quotation marks omitted); *see also United States v. Harmon*, 607 F.3d 233, 239 (6th Cir. 2010); *United States v. Covert*, 117 F.3d 940, 945 (6th Cir. 1997).

When imposing a consecutive sentence, "a district court must indicate on the record its rationale, either expressly or by reference to a discussion of relevant considerations contained elsewhere." *United States v. Cochrane*, 702 F.3d 334, 346 (6th Cir. 2012), *abrogated on other grounds by Rodriguez v. United States*, 575 U.S. 348 (2015). The court's explanation for the length of the sentence and the rationale for imposing a consecutive sentence may be "intertwined." *Johnson*, 640 F.3d at 208; *see also United States v. Berry*, 565 F.3d 332, 343 (6th Cir. 2009) ("Requiring district courts to conduct a separate Section 3553(a) analysis for the concurrent or consecutive nature of the sentence would be repetitious and unwarranted, and we hold that district courts have no such distinct obligation.").

The district court made it "generally clear" why it ordered Salisbury's federal sentence to run consecutively to his undischarged state prison sentence. At the sentencing hearing, Salisbury explained to the court that he had served two years of his undischarged state prison sentence. The court then discussed the nature of the offense, mitigating factors, Salisbury's substance abuse, his history of violence, and his criminal record. Immediately after addressing the "particularly important" § 3553(a) factors, the court concluded that the 77-month sentence would run consecutively to the undischarged state prison sentence. The court explained that the state offense and the federal offense "were separate events," and that "it's appropriate that the sentences indeed be served for the different behavior."

The record shows that the district court considered (1) the § 3553(a) factors, (2) the time Salisbury already served on the undischarged sentence, and (3) the fact that the federal offense and the state offense arose from wholly unrelated events. To be sure, the court's rationale was "somewhat cursory." *United States v. Watford*, 468 F.3d 891, 917 (6th Cir. 2006). But it reflected the relevant considerations under § 3553 and § 5G1.3 enough to make clear why it imposed a consecutive sentence. *Id.* at 916. It was, therefore, sufficient. *Id.* Indeed, we have affirmed consecutive sentences when the district court articulated a nearly identical rationale. *See, e.g.*, *United States v. McGhee*, No. 22-3471, 2023 WL 3815181, at *4 (6th Cir. June 5, 2023) (concluding that the district court neither abused its discretion nor plainly erred when it explained that a consecutive sentence was appropriate because the federal offense "is separate and distinct" from the conduct underlying the undischarged state prison sentence); *United States v. Kitchen*, 428 F. App'x 593, 597–98 (6th Cir. 2011) (holding that the district court did not abuse its discretion by imposing a consecutive sentence when it explained that the federal offense and the state offense were "separate and distinct matters"); *Watford*, 468 F.3d at 916–17 (finding that the district court did not abuse its discretion when it imposed a consecutive sentence because "the conduct in [the federal] case stands apart and is separable factually, temporally and in any other fashion" from the undischarged state prison sentence). We do the same here.

### 2.    Substantive Reasonableness

We are also not persuaded by Salisbury's claim that the consecutive sentence is substantively unreasonable because it creates "disparities." Salisbury asserts that a consecutive sentence "adds more than 24 months" and "as much as 240 months" to his undischarged state prison sentence. But this is legally—and mathematically—incorrect.

When imposing a sentence, § 3553(a) requires a district court to consider "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct." 18 U.S.C. § 3553(a)(6). This factor concerns national sentencing disparities, not disparities between co-defendants. *United States v. Simmons*, 501 F.3d 620, 623–24 (6th Cir. 2007). When a sentence is within the guidelines range, a claim that the sentence creates disparities is "an unconventional ground" for appeal. *United States v. Swafford*, 639 F.3d 265, 270 (6th Cir. 2011). This is because the sentencing guidelines are intended to "reduce disparities, not create them." *United States v. Bailey*, 27 F.4th 1210, 1215 (6th Cir.), *cert. denied*, 143 S. Ct. 267 (2022).

Salisbury does not dispute the PSR's assertion that for similarly-situated defendants, the average sentence is 71 months and the median sentence is 77 months. Instead, Salisbury argues—without support—that his consecutive sentence creates "an increase far beyond what others with similar records and crimes face in the federal system."

First, we reject his claim that a 77-month consecutive sentence adds "as much as 240 months" to his overall term of incarceration; it adds 77 months. Second, we disagree with Salisbury's premise that the 77-month sentence "increases" his undischarged state prison sentence. The record clearly indicates that Salisbury's federal offense and his state offense are distinct and unrelated. His federal offense arose from a 2020 arrest after he attempted to purchase methamphetamine for resale. His state offense arose from a 2022 traffic stop during which law enforcement officers discovered methamphetamine in his car. For the latter offense, Salisbury received a sentence of 14 to 240 months under Michigan's habitual offender statute. The district

court did not "increase" Salisbury's state prison sentence; it merely imposed a separate—and statistically average—sentence for a separate offense. Thus, the court's decision to impose a consecutive sentence was substantively reasonable.

## C.     Special Conditions of Supervised Release

In addition to a 77-month term of incarceration, the district court also imposed a four-year term of supervised release. The court may, at its discretion, attach conditions to a defendant's term of supervised release. *See* 18 U.S.C. § 3583(c). These conditions must be "reasonably related" to the § 3553(a) factors, and any deprivations of liberty must not be greater than what is "reasonably necessary" to achieve the goals of sentencing. *Id.* § 3583(d).

Salisbury objects to the condition that he cannot have "direct contact" with any child that he knows or should know is under the age of 18 without permission from his probation officer.[1] In his view, the court "owed him an explanation" for why it imposed this condition, which will leave him "isolated" from his grandchild. In short, Salisbury challenges both the procedural and substantive reasonableness of this special condition of supervised release. *See United States v. Carter*, 463 F.3d 526, 528–29 (6th Cir. 2006).

### 1.     Procedural Reasonableness

Because Salisbury did not object to the special conditions before the district court, we review his procedural reasonableness claim for plain error. *United States v. Zobel*, 696 F.3d 558, 572 (6th Cir. 2012). To be procedurally reasonable, the court must state in open court the reasons for imposing special conditions of supervised release. *United States v. Widmer*, 785 F.3d 200, 203 (6th Cir. 2015). If the court's discussion of the § 3553(a) factors "satisfies the procedural reasonableness requirement for imposing a term of incarceration," it can also demonstrate that "attachment of special conditions was also procedurally reasonable." *United States v. Henry*, 819

---

[1] The PSR—to which Salisbury did not object—recommended that the court attach this special condition to Salisbury's supervised release.

F.3d 856, 874 (6th Cir. 2016). "Even if the district court failed to adequately explain its decision, the error is harmless if the reasons for imposing the special conditions are 'clear from the record.'" *Id.* (quoting *United States v. Collins*, 799 F.3d 554, 599 (6th Cir. 2015)).

The district court's justification for imposing this special condition was clear from the record. To be sure, the court did not explain its reasoning immediately before or after it announced the special condition. But before imposing its sentence, the court referenced information in the PSR and specifically noted its concern with Salisbury's prior sex offenses. The PSR stated that Salisbury had (1) inappropriately touched, kissed, and licked an incapacitated a 17-year-old victim, (2) sexually assaulted his daughter's 13-year-old friend while she stayed overnight in his home, and (3) failed to comply with his reporting duties as a sex offender. The government argued that this criminal history shows that Salisbury was "incredibly violent towards women and children on a consistent basis." The reason for the special condition "is clear from the record," as it "addressed the need . . . to protect the public" by minimizing Salisbury's contact with minors. *United States v. Lenhart*, No. 22-3111, 2023 WL 5524851, at *4 (6th Cir. Aug. 23, 2023). Thus, any procedural error by the court is harmless. *Henry*, 819 F.3d at 874.

### 2. Substantive Reasonableness

Before addressing the substantive reasonableness of the special conditions of supervised release, we must address the proper standard of review. In cases where the defendant did not object to the special conditions in the district court, we have reviewed the substantive reasonableness of the conditions for plain error. *See, e.g.*, *United States v. Davis*, No. 22-5215, 2023 WL 2487338, at *4 (6th Cir. Mar. 14, 2023); *Henry*, 819 F.3d at 873–76; *Zobel*, 696 F.3d at 573. But we have also said that "we review *all* substantive arguments for abuse of discretion and reasonableness." *United States v. Graham*, 622 F.3d 445, 464 (6th Cir. 2010) (emphasis added); *see also United States v. Jackson*, No. 22-3288, 2023 WL 3059078, at *2 (6th Cir. Apr. 24, 2023) ("We always review substantive reasonableness for abuse of discretion."). Here, the outcome is the same under

either standard: the condition of supervised release is substantively reasonable. Therefore, we need not reach a conclusion as to the appropriate standard.

The district court has "broad discretion to impose appropriate conditions of supervised release." *United States v. Ritter*, 118 F.3d 502, 506 (6th Cir. 1997). When reviewing the substantive reasonableness of a special condition, we look to whether it (1) "is reasonably related to specified sentencing factors," (2) "involves no greater deprivation of liberty than is reasonably necessary to achieve these goals," and (3) "is consistent with any pertinent policy statements issued by the Sentencing Commission." *Id.* at 504; *see also* U.S. Sent'g Guidelines Manual § 5D1.3(b) (U.S. Sent'g Comm'n 2021). If the conditions of supervised release are "reasonably related to the dual goals of probation, the rehabilitation of the defendant and the protection of the public, [they] must be upheld." *Ritter*, 118 F.3d at 504 (quoting *United States v. Bortels*, 962 F.2d 558, 560 (6th Cir. 1992)). Even if a condition implicates a defendant's fundamental right to freedom of association, it is "generally upheld" if it is "primarily designed to meet the ends of rehabilitation and protection of the public." *Id.*

On appeal, Salisbury correctly notes that the special condition at issue (prohibiting contact with minors) does not relate to his federal offense (possession with intent to distribute methamphetamine). But a direct relation is not required. Instead, the special condition may be "based on *any* of several sentencing factors," including "'the history and characteristics of the defendant.'" *United States v. Childress*, 874 F.3d 523, 527 n.2 (6th Cir. 2017) (emphasis added) (quoting 18 U.S.C. § 3553(a)(1)). And here, the special condition related to Salisbury's history of sexually assaulting minor children and "the need . . . to protect the public from further crimes" by him. *See* 18 U.S.C. § 3553(a)(1), (a)(2)(C). Moreover, the special condition is neither permanent nor absolute. The district court imposed only a four-year term of supervised release, and Salisbury

can be in contact with a minor if he has permission from his probation officer.[2] The court neither abused its discretion nor plainly erred in imposing the condition in light of Salisbury's history of sexually assaulting minors.

### III.

We **AFFIRM** the district court's judgment.

---

[2] We have found a nearly identical special condition to be substantively reasonable. *See United States v. Wagner*, No. 22-1880, 2024 WL 328841, at *7 (6th Cir. Jan. 29, 2024) (affirming the imposition of special conditions which included a requirement that the defendant "must not have direct contact with any child he knows or reasonably should know to be under the age of 18, without the permission of the probation officer" (internal quotation marks omitted)).